# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JAMES E. BROWN,                           Case No. 1:17-cv-583
    Petitioner,

                      McFarland, J.

    vs.                                   Litkovitz, M.J.

WARDEN, CHILLICOTHE                       **REPORT AND**
CORRECTIONAL INSTITUTION,                 **RECOMMENDATION**
    Respondent.

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On August 20, 2018, this action was stayed so that petitioner could exhaust his state court remedies.  (Doc. 10). Petitioner reinstated the action and filed an amended petition.  (*See* Doc. 12, 13, 19, 20).  This matter is now before the Court on the petition, as amended (Doc. 19-1), respondent's return of writ (Doc. 22), and petitioner's reply (Doc. 46).

For the reasons stated below, the petition should be denied.

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> On February 27, 2013, Ohio State Highway Patrol Trooper Nick Lewis observed the driver of a car look away from him.  Suspicious of this behavior, Lewis followed the driver (appellant) and observed him cross the white "fog lane" by at least a tire width for a distance of thirty to forty yards.  Trooper Lewis stopped the car.  During his contact with appellant, Trooper Lewis detected the odor of marijuana. Subsequently, the officer took appellant into custody and eventually found drugs in the vehicle.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

(Doc. 21, Ex. 15).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On April 17, 2013, the Scioto County, Ohio grand jury returned a seven-count indictment charging petitioner with two counts of trafficking in drugs, four counts of possession of drugs, and one count of tampering with evidence.  (Doc. 21, Ex. 1).  Petitioner, through counsel, entered a plea of not guilty to all charges.  On May 7, 2013, petitioner executed a waiver of time to June 27, 2013.  (Doc. 21, Ex. 2).

Petitioner filed a motion to suppress all evidence obtained from the traffic stop on the ground that the stop was initiated without probable cause.  (Doc. 21, Ex. 3).  Following a hearing, the trial court overruled the motion on June 17, 2013.  (Doc. 21, Ex. 4).

On June 19, 2013, the prosecution filed a motion to continue, which was granted by the trial court.  (Doc. 21, Ex. 5).  The trial was continued to July 22, 2013.  (Doc. 21, Ex. 6).  On July 3, 2013, a final continuance was granted at the request of defense counsel due to a scheduling conflict.  (Doc. 21, Ex. 7, 8).  The case was continued until October 15, 2013.

Prior to trial, petitioner filed a motion to dismiss the charges for failure to bring petitioner to trial within the time required by Ohio Rev. Code § 2945.71.  (Doc. 21, Ex. 9).  The trial court overruled the motion.

On October 15, 2013, following a jury trial, petitioner was found guilty of  two counts of trafficking in drugs and four counts of possession of drugs.  On the same date petitioner was sentenced to a total aggregate prison sentence of sixteen years in the Ohio Department of Corrections.  (Doc. 21, Ex. 10).

2

**Direct Appeal**

Petitioner appealed his judgment of conviction and sentence to the Ohio Court of

Appeals.  Petitioner, through different counsel than at trial, raised the following two assignments

of error in his appellate brief:

1. The trial court erred in failing to dismiss the charges against Appellant Brown when he was denied his right to a speedy trial pursuant to R.C. 2945.71. Additionally, the failure to provide a speedy trial is a violation of Brown's fundamental rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

2. The trial court erred in denying Appellant Brown's Motion to Suppress as the statements made by Brown and the items obtained from the search were elicited in violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. 21, Ex. 12).  On March 25, 2016, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the judgment of the trial court.  (Doc. 21, Ex. 15).  Petitioner

filed a pro se motion for reconsideration, which was overruled by the appeals court on  May 11,

2016.  (Doc. 21, Ex. 16, 18).

**Ohio Supreme Court**

On June 24, 2016, petitioner filed a pro se notice of appeal to the Ohio Supreme Court.

(Doc. 21, Ex. 19).  In his memorandum in support of jurisdiction, petitioner raised the following

two propositions of law:

Proposition of Law I:  The Appellate Court Errors to the Detriment of the Appellant when it does not independently determine appellant's application for Reconsideration, which requires De Novo Review.

Proposition of Law II:  The Appellate Court Errors to the Detriment of the Appellant when it failed to independently review appellant's Reconsideration Motion on the issue of Credibility of The States Witness.

3

(Doc. 21, Ex. 20).  On October 5, 2016, the Ohio Supreme Court declined jurisdiction of the appeal.  (Doc. 21, Ex. 22).

### Post-Conviction Proceedings

Meanwhile, on December 20, 2013, during the pendency of his direct appeal, petitioner filed a pro se motion to vacate illegal sentence pursuant to Ohio Crim. R. 57(B).  (Doc. 21, Ex. 23).  On February 19, 2014, the trial court overruled the motion for lack of jurisdiction.  (Doc. 21, Ex. 25).

Petitioner also filed a petition to vacate or set aside judgment pursuant to Ohio Rev. Code § 2953.21, which was denied by the trial court on December 21, 2017.  (Doc. 21, Ex. 26, 29, 31).  Petitioner raised the following five claims in the petition:

1. Petitioner was deprived of his Sixth Amendment right to counsel as his trial counsel was ineffective as Trial Counsel did not engage the services of B.C.I. Laboratory Technician to assist in the Petitioner defense.

2. Petitioner was deprived of his Sixth Amendment Right to Counsel as trial counsel was ineffective as trial counsel did not engage the services of a certified D.N.A. Expert to assist in the Petitioner defense.

3. Petitioner was deprived of his Sixth Amendment Right to Counsel as his trial counsel was ineffective as trial counsel did not engage in the services of a video and audio expert to assist in the Petitioner defense, nor did trial counsel make any effort to file a motion to make use of the video and audio.

4. Petitioner was deprived of his Sixth Amendment Right to Counsel as his trial counsel was ineffective by not bringing to light evidence relating to the Tampering with Evidence count (count 7) of the state's indictment in the light of the not Guilty Verdict by the Duly Empaneled Jury.

5. Petitioner was deprived of his Sixth Amendment Right to Counsel as his trial counsel was ineffective as trial counsel did not provide an Effective Discovery required by Criminal Rule 16, and therefore violated Petitioner Fifth, Sixth, and Fourteenth Amendment of the U.S. Constitution and Article 1 Section 10 and

4

16 of the Ohio Constitution.

(Doc. 21, Ex. 26).  The trial court found that the petition was untimely and barred by the doctrine of res judicata.  (Doc. 21, Ex. 31 at PageID 298).  Petitioner unsuccessfully appealed the decision in the Ohio Court of Appeals and Ohio Supreme Court.  (Doc. 21, Ex. 32, 33, 36, 38, 39, 40, 41). The Ohio Supreme Court declined jurisdiction over petitioner's appeal on June 12, 2019.  (Doc. 21, Ex. 41).

**Federal Habeas Corpus**

On June 25, 2019, petitioner reinstated the instant federal habeas corpus action.  (Doc. 13).  Petitioner subsequently filed an amended habeas corpus petition raising the following two grounds for relief:

> **GROUND ONE:** Trial court erred in denying petitioner's motion to dismiss.
>
> Supporting facts:  The trial court erred in failing to dismiss the charges against Brown when he was denied his right to a speedy trial.  Additionally this failure to provide a speedy trial is a violation of Brown's fundamental rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> **GROUND TWO:** The trial court erred in denying Brown's motion to suppress when the evidence collected was the result of an unlawful detention.
>
> Supporting facts:  The trial court erred in denying Brown's motion to suppress as the statements made by Brown and the items obtained from the search were elicited in violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(*See* Doc. 19-1).[2]  Respondent has filed a return of writ in opposition to the petition, to which petitioner has replied.  (Doc. 22, 46).  According to respondent, petitioner's grounds for relief are

---

[2] As discussed below, petitioner includes two additional grounds for relief in his traverse which were not included in his petition or amended petition.

without merit or not cognizable in federal habeas corpus.

### III.  THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* 563 U.S. 170, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

7

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at 182, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision*.'" *Id.*, at 182, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Ground One is without merit.**

In Ground One, petitioner claims that his speedy trial rights were violated. Petitioner

raised this claim on direct appeal. The Ohio Court of Appeals overruled the assignment of error,

reasoning as follows: [3]

> Our analysis begins with the premise that appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation involves a mixed question of law and fact. *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, at ¶23; *State v. Smith*, 4th Dist. Ross No. 10CA3148, 2011-Ohio-602, at ¶18. Generally, an appellate court will review de novo a trial court's application of the law to those facts. *State v. Carr*, 4th Dist. Ross No. 12CA3358, 2013-Ohio-5312, at ¶12; *State v. Fisher*, 4th Dist. Ross No. 11CA3292, 2012-Ohio-6144, at ¶8.
>
> R.C. 2945.71 states that a person against whom a felony charge is pending shall be brought to trial within two hundred seventy days of his arrest. *Id.* at (C)(2). If an accused is incarcerated in lieu of bail solely on the pending charge, the statue mandates that each day count as three days. *Id.* at (E). If an accused is not brought to trial within the statutory time limit, he must be discharged. R.C. 2945.73(B). Also, the R.C. 2945.71 time limits may be extended for reasons set out in R.C. 2945.72, but those extensions will be strictly construed against the state. *State v. Alexander*, 4th Dist. Scioto No. 08CA3221, 2009-Ohio-1401, at ¶17; *State v. Monroe*, 4th Dist. Scioto No. 05CA3042, 2007-Ohio-1492, at ¶27.
>
> Although the original papers are unclear as to the precise date on which appellant was arrested and incarcerated, the October 13, 2015 transcript reveals that the state conceded it "would probably stipulate [appellant] was arrested on—and incarcerated on 2–27, February 27th of 2013." Both parties apparently agree that appellant remained jailed from that time to the date of the trial. Thus, the triple-count provision should apply.
>
> Our review further reveals that the first tolling event occurred on May 7, 2013 when appellant filed a waiver of time. Thus, from appellant's arrest to May 7, sixty-nine days elapsed. That waiver, as originally typed, set forth no end date. However, a handwritten sentence states that it "is for a period of 30 additional days to June 27, 2013." Thus, June 27, 2013 is the date specified in the time waiver. This

---

[3] In addressing the claim, the Ohio Court of Appeals noted that although petitioner raised both statutory and constitutional law speedy trial claims on appeal, his pre-trial motion was only raised under Ohio law. Accordingly, the Ohio appeals court limited its review to the statutory speedy trial right. In this regard, it appears petitioner procedurally defaulted and waived his constitutional speedy trial claim. In any event, for the reasons stated below, his claim is without merit.

sentence appears to be somewhat contradictory, however, as it appears that a thirty day time period would have expired earlier than the specified date of June 27, 2013.

If we use June 27, 2013 as the date that the speedy trial clock re-started, the next tolling event is appellant's July 3, 2013 motion to continue the trial date. Thus, five days elapsed between the end of appellant's previous waiver and appellant's motion for a continuance. The trial date was then continued to October 15, 2013, when the trial actually occurred. We believe that this time is properly chargeable to appellant. Thus, by our calculation, seventy-four of the ninety days elapsed for speedy trial purposes and appellant's trial occurred within the statutory time limit.

We recognize that the thrust of appellant's argument centers upon the state's June 19, 2013 motion for a continuance of the scheduled trial date due to the unavailability of an expert witness. The trial court granted the state's request on June 25, 2013 and rescheduled the trial to July 22, 2013. Further, in the entry granting the request, the trial court stated that speedy trial time would be tolled during this delay and concluded that the continuance was reasonable and necessary under R.C. 2945.72(H). However, this new date apparently conflicted with appellant's trial counsel's schedule and, on July 3, 2013, counsel requested a continuance of the July 22, 2013 trial date. The trial court granted that request and rescheduled the trial date to October 15, 2013.

Appellant argues that the state's continuance violated his statutory right to a speedy trial. We, however, disagree with appellant for two reasons. First, as we pointed out above, appellant's July 3, 2013 request for a continuance tolled the speedy trial clock. Thus, it makes no difference whether the state's June 19, 2013 request for a continuance tolled the speedy trial time because appellant's trial occurred within the prescribed time limit.

Second, we believe that the trial court's granting of the state's request for a continuance due to the unavailability of an expert witness did, in fact, properly toll the speedy trial clock. R.C. 2945.72(H) tolls the running of speedy trial time for "the period of any reasonable continuance granted other than upon the accused's own motion." Therefore, the speedy trial time runs against the state if a continuance is unreasonably granted. The Ohio Supreme Court has held that continuances granted on the state's motion will toll the running of speedy trial time if the continuance is reasonable and necessary under the circumstances of the case. *State v. Saffell* (1988), 35 Ohio St.3d 90, 91, 518 N.E.2d 934. Again, the record must affirmatively demonstrate that the continuance was reasonable and necessary. *Id.* The reasonableness of a continuance is determined by examining the purpose and length of the continuance as specified in the record. *State v. Lee* (1976), 48 Ohio St.2d 208, 210, 357 N.E.2d 1095. The Ohio Supreme Court has stated that "it is difficult, if not unwise, to establish a per se rule of what

10

constitutes 'reasonableness' beyond the ninety-day stricture of R.C. 2945.71. Invariably resolution of such a question depends on the peculiar facts of a particular case." *State v. Saffell* (1988), 35 Ohio St.3d 90, 91, 518 N.E.2d 934.

In the case sub judice, we do not believe that the trial court's decision to grant the state's June 19, 2013 request to continue the trial date due to the unavailability of its expert witness is either unreasonable or unnecessary under the circumstances of this case. The state advised the court that its expert witness had scheduling conflicts with other criminal trials and would not be available to testify. Many courts have concluded that reasonable continuances are appropriate, and may toll the time for speedy trial, in order to accommodate the schedule of a witness or a prosecutor. *Saffell, State v. Crocker,* 2015-Ohio-2528, 38 N.E.3d 369; *State v. Watson,* 10th Dist. Franklin No. 13AP–148, 2013-Ohio-5603, 2013 WL 6726951; *State v. Carmon,* 10th Dist. Franklin No. 11AP–818, 2012-Ohio-1615, 2012 WL 1247173.

Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

(Doc. 21, Ex. 15 at PageID 200-204) (footnote omitted).

Upon review of the petition and record in this case, the Court finds that petitioner is not entitled to federal habeas relief. As an initial matter, because the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). *Cf. Wilcher v. Rose*, No. 95-3835, 1996 WL 262951, at *1 (6th Cir. May 16, 1996) (citing *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir. 1984)) (holding that "[t]he district court properly found that [the habeas petitioner's] speedy trial claim was not cognizable insofar as it was based solely on state law"); *Herron v. Kelly,* Case No. 1:10-cv-1783, 2013 WL 3245326, at

11

*5 (N.D. Ohio June 26, 2013) (holding that the petitioner's speedy trial claim, which was "premised on his interpretation of his state statutory rights," did not constitute a "cognizable claim for federal habeas relief"); *Younker v. Warden, Chillicothe Corr. Inst.*, No. 1:10-cv-875, 2011 WL 2982589, at *10 (S.D. Ohio June 24, 2011) (Bowman, M.J.) (Report & Recommendation) (and cases cited therein) (holding that "to the extent petitioner's arguments for relief are based solely on a violation of Ohio's speedy trial statute or other error under Ohio law, he does not present a cognizable federal constitutional claim subject to review in this proceeding"), *adopted*, 2011 WL 2976790 (S.D. Ohio July 22, 2011) (Dlott, J.).  The Court only has jurisdiction to consider whether the pre-trial delay amounted to a violation of petitioner's federal constitutional speedy trial right.

The Sixth Amendment guarantees a defendant the right to a speedy trial, which involves a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long;" (2) "whether the government or the criminal defendant is more to blame for the delay;" (3) "whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he suffered prejudice as the delay's result."  *Doggett v. United States,* 505 U.S. 647, 651, 655 (1992); *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *see also Wilson v. Mitchell,* 250 F.3d 388, 394 (6th Cir. 2001).

"The first factor serves a dual function."  *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).  First, as a threshold requirement, the Court must determine that the length of delay is presumptively prejudicial.  *Id.*  "[T]he length of the delay is the triggering factor because 'until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'"  *Wilson,* 250 F.3d at 394 (quoting *Barker,* 407

U.S. at 530); *see also Doggett,* 505 U.S. at 651-52. If the length of the delay is found to be "presumptively prejudicial," it must then be considered "as one factor among several" in determining whether the accused was deprived of his Sixth Amendment speedy trial right. *See Doggett,* 505 U.S. at 652 (citing *Barker,* 407 U.S. at 533-34).

Petitioner has failed to make a threshold showing of prejudice. Although delays approaching one year are "presumptively prejudicial" and thus satisfy the threshold requirement for review of a speedy trial claim under the four-factor balancing test, *see, e.g., Doggett*, 505 U.S. at 652 n.1; *Robinson*, 455 F.3d at 607, the delay that occurred in this case between petitioner's arrest on February 27, 2013 and trial on October 15, 2013, was less than eight months. Furthermore, in assessing the length of the delay, "only those periods of delay attributable to the government or the court are relevant to [petitioner's] constitutional claim." *United States v. Howard*, 215 F.3d 556, 564 (2000). As observed by the Ohio Court of Appeals, two tolling events attributable to the defense occurred, including petitioner's May 7, 2013 waiver of time and July 3, 2013 motion to continue. Taking these time periods into account, the relevant period of delay for petitioner's speedy trial claim is 74 days, or less than three months.[4]

Because the length of the delay was not "uncommonly long," petitioner is unable to demonstrate that Sixth Amendment speedy trial concerns are implicated in this case.[5] *See*

---

[4] As noted by the Ohio Court of Appeals, sixty-nine days passed between petitioner's February 27, 2013 arrest and May 7, 2013 waiver. The waiver motion requested that the trial date be moved from May 27, 2013 to June 27, 2013. (*See* Doc. 21, Ex. 12 at PageID 137). Five days after the expiration of the waiver, petitioner filed a motion to continue on July 3, 2013. The trial court granted the motion and continued the trial until October 15, 2013.

[5] *See, e.g., United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (finding that a "six-and one half month delay is not excessive and does not rise to the level of constitutional violation"); *see also Bennett v. Warden*, No. 2009-cv-00622, 2011 WL 901529, at *1 (S.D. Ohio Mar. 15, 2011) (six month delay not presumptively prejudicial); *Wilcher v. Rose*, No. 95-3835, 1996 WL 262951, at *1 (6th Cir. May 16, 1996) (finding that ten and one half month pretrial delay did not create a presumption of prejudice); *Smith v. Brigano*, No. 94-3764, 1995 WL 283781, at *2 (6th Cir.

13

*Schreane*, 331 F.3d at 553 ("if the delay is not uncommonly long, judicial examination ceases"). *Cf. Herron*, *supra*, 2013 WL 3245326, at *6 (holding that the six-month delay between the petitioner's arrest and entry of his guilty plea was not "presumptively prejudicial" and that, therefore, the Court could conclude that the petitioner's constitutional right to a speedy trial was not violated without considering the other three *Barker* factors); *see also United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (involving nine-month delay between the indictment and trial date).

Moreover, even if petitioner could satisfy his threshold showing that the delay in his case was "presumptively prejudicial," upon consideration of the remaining *Barker* factors, the undersigned is convinced that petitioner is not entitled to habeas corpus relief on his claim that he was deprived of his constitutional right to a speedy trial.  While petitioner did assert his right to a speedy trial in the state court proceedings, the delays not attributable to petitioner were not excessive, intentional, or motivated by bad faith.  *See Barker,* 407 U.S. at 531; *Doggett,* 505 U.S. at 656–57; *Schreane*, 331 F.3d at 553–54.  Finally, with respect to the fourth *Barker* factor, at no point in this proceeding or in the state courts has petitioner argued or demonstrated that he was prejudiced in any way by the delay.  *See Schreane*, 331 F.3d at 559 (quoting *Howard*, 215 F.3d at 564) ("If 'the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay.'").

Accordingly, in sum, this Court concludes petitioner was not denied his Sixth

---

May 10, 1995) (finding six and one-half month delay, even if entirely attributable to the state, is not presumptively prejudicial); *United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (eight-month-and-three-week delay not presumptively prejudicial).

Amendment right to a speedy trial. Petitioner is therefore not entitled to federal habeas corpus relief based on Ground One of the petition.

**B. Ground Two is not cognizable in federal habeas corpus.**

In Ground Two of the petition, petitioner claims that his Fourth Amendment rights were violated when the trial court failed to suppress all evidence obtained in the traffic stop on the ground that the stop was initiated without probable cause. As noted above, petitioner challenged the search in a motion to suppress in the trial court and on further review in the Ohio Court of Appeals. In overruling petitioner's assignment of error on direct appeal, the appeals court reasoned as follows:

> In his second assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. We disagree.
>
> Generally, appellate review of a decision on a motion to suppress evidence involves mixed questions of law and fact. See *State v. Grubb,* 186 Ohio App.3d 744, 930 N.E.2d 380, 2010-Ohio-1265, at ¶ 12 (3rd Dist.); *State v. Book,* 165 Ohio App.3d 511, 847 N.E.2d 52, 2006-Ohio-1102, at ¶ 9 (4th Dist.). In hearing such motions, trial courts assume the role of trier of fact and are best situated to resolve factual disputes and to evaluate witness credibility. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100; *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
>
> Appellate courts will accept a trial court's factual finding if competent and credible evidence supports that finding. *State v. Little,* 183 Ohio App.3d 680, 918 N.E.2d 230, 2009-Ohio-4403, at ¶ 15 (2nd Dist.); *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). However, appellate courts will review de novo a trial court's application of law to those facts. See *State v. Higgins,* 183 Ohio App.3d 465, 2009-Ohio-3979, 917 N.E.2d 363, at ¶ 14 (5th Dist.); *State v. Poole,* 185 Ohio App.3d 38, 2009-Ohio-5634, 923 N.E.2d 167, at ¶ 18 (11th Dist.).
>
> The basis for the suppression motion in the case sub judice is that Trooper Lewis did not have "sufficient probable cause" to stop appellant's vehicle.
>
> The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against

unreasonable governmental searches and seizures. *Delaware v. Prouse,* 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Gullett,* 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992). "[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 15; *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. *Roberts* at ¶ 98; *Maumee v. Weisner,* 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999); *Xenia v. Wallace,* 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of the syllabus.

A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Delaware v. Prouse,* 440 U.S. at 653, 99 S.Ct. 1391. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Whren,* 517 U.S. at 810, 116 S.Ct. 1769. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citations omitted); *accord Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). Consequently, "[p]robable cause is * * * a complete justification for a traffic stop * * *." *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *accord Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 11.

We note, however, that probable cause is not required to justify a traffic stop. *Mays* at ¶ 23. Instead, a traffic stop may be based upon less than probable cause when an officer possesses reasonable suspicion that the driver has committed, or is committing, a crime, including a minor traffic violation. *Id.* at ¶¶ 7–8; *State v. Williams,* 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897, 2014 WL 5513050, ¶ 8; *State v. Ward,* 4th Dist. Washington No. 10CA30, 2011-Ohio-1261, 2011 WL 917854, ¶ 13. To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation. *E.g., Williams* at ¶ 8.

A court that must determine whether an officer possessed probable cause or a reasonable suspicion to stop a vehicle must examine the totality of the circumstances. *Mays* at ¶ 7. "[T]he question whether a traffic stop violates the Fourth Amendment * * * requires an objective assessment of a police officer's

16

actions in light of the facts and circumstances." *Bowling Green* at ¶ 14. "[T]he existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver]'s conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Id.* at ¶ 16.

Moreover, simply because a driver cannot ultimately be convicted of a traffic offense "is not determinative of whether the officer acted reasonably in stopping and citing [the driver] for that offense. Probable cause does not require the officer to correctly predict that a conviction will result." *Id.* at ¶ 15. As we explained in *State v. Emerick,* 4th Dist. Washington No. 06CA45, 2007-Ohio-4398, 2007 WL 2410892, ¶ 15:

> "A traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance. * * * The very purpose of an investigative stop is to determine whether criminal activity is afoot. This does not require scientific certainty of a violation nor does it invalidate a stop on the basis that the subsequent investigation reveals no illegal activity is present."

(citations omitted); *accord Mays* at ¶ 17 (explaining that whether a driver has a possible defense to traffic violation "is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop"). See also *Heien v. North Carolina,* 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) (officer's mistake of law in stopping a vehicle with one functioning brake light, when the state vehicle code requires only one working brake light, was a reasonable mistake that did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.)

This court has previously determined that a traffic stop complies with the Fourth Amendment's reasonableness requirement if an officer possesses probable cause or reasonable suspicion to believe that a driver committed a marked lanes violation. *State v. Crocker,* 4th Dist., 2015-Ohio-2528, 38 N.E.3d 369, ¶ 62; *State v. Littlefield,* 4th Dist. Ross No. 11CA3247, 2013-Ohio-481, 2013 WL 557170, ¶ 15.

 In the case sub judice, we agree with the trial court's conclusion that the evidence adduced at the hearing, if believed, reveals that the officer observed appellant appear to violate a traffic statute. Trooper Lewis observed appellant drive over the "white fog line" by at least one tire width for thirty to forty yards. R.C. 4511.33(A) requires, inter alia, a "vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane." The Ohio Supreme Court held that "[w]hen an officer observes a vehicle drifting back-

and-forth across an edge line," the driver has violated R.C. 4511.33. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 16. Here, the evidence reveals that appellant failed to operate his vehicle within marked lanes. Therefore, we agree with the trial court's conclusion that the stop of appellant's vehicle was constitutionally justified and the trial court correctly overruled appellant's motion to suppress evidence.

Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error and affirm the trial court's judgment.

(Doc. 21, Ex. 15 at PageID 204-210).

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp. 2d

773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[6]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts' resolution of those claims." Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638

---

[6] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp. 2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010).

F. Supp. 2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v. Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of [F]ourth [A]mendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone." Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing

20

was thwarted.  *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent").  To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his Fourth Amendment claims in the state courts.

Petitioner was permitted to raise his claims to the trial court through a motion to suppress, and the trial court held a hearing on the matter.  (*See* Doc. 21, Ex. 3, 4, 42).  Moreover, petitioner was able to challenge the trial court's ruling on direct appeal to the Ohio Court of Appeals and in the Ohio Supreme Court.  (*See* Doc. 21, Ex. 15, 22).  As set forth above, the Ohio Court of Appeals carefully considered petitioner's arguments and the applicable precedents in affirming the trial court's ruling.[7]

---

[7] Petitioner argues that trial counsel was ineffective during his suppression hearing.  (Doc. 46 at PageID 515).  To the extent that petitioner contends that he was deprived of a full and fair hearing to litigate his Fourth Amendment claims based on a claim of ineffective assistance of counsel, the undersigned is not persuaded.  Although petitioner's Fourth Amendment claim is itself barred by *Stone*, counsel's alleged ineffective assistance during the suppression hearing is cognizable.  *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986) ("[W]e reject petitioners' argument that *Stone*'s restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue").  Petitioner contends that counsel should have reviewed the transcript of his March 8, 2013 probable cause/preliminary hearing to demonstrate inconsistencies and challenge the credibility of trooper Lewis during his June 17, 2013 suppression hearing.  (Doc. 46 at PageID 515).  As an initial matter, petitioner does not raise an ineffective assistance of counsel claim as a ground for relief in the instant petition and failed to raise this claim at any point during the state court proceedings.  Therefore, the claim appears to be procedurally defaulted and waived.  Petitioner did claim that his counsel was ineffective on several other bases in his October 3, 2014 post-conviction petition, but the Ohio Court of Appeals determined that the trial court properly dismissed the petition because petitioner "failed to submit supporting affidavits or documentary evidence to satisfy his burden to set forth sufficient operative facts to establish substantive grounds for relief," in addition to determining that the petition was barred by *res judicata*.  (*See* Doc. 21, Ex. 36 at PageID 336).

In any event, even if petitioner could demonstrate that counsel's failure to review the preliminary hearing transcript was deficient, petitioner fails to demonstrate that he was prejudiced.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  The only specific "inconsistency" petitioner identifies regarding Lewis's testimony at the March 8, 2013 preliminary hearing is that "[b]ased off of petitioner['s] limited memory trooper Lewis never suggested that

Accordingly, the Court concludes that Ground Two, challenging the search and seizure of evidence under the Fourth Amendment, are barred from review under the Supreme Court's *Stone* decision.

## C. Additional Claims Raised in Petitioner's Traverse

In addition to Grounds One and Two raised in the petition, petitioner includes two additional grounds for relief in his traverse. (*See* Doc. 46 at PageID 511). In these grounds for relief, petitioner claims that the Ohio trial court violated his constitutional rights by finding his post-conviction petition to be time-barred and barred under the doctrine of *res judicata*. Although petitioner indicates that he filed an amended petition that included the additional grounds for relief on August 22, 2019 (*id.* at PageID 535), the amended petition received by the Court did not include these claims. (*See* Doc. 19-1).

In any event, petitioner's additional grounds for relief asserting constitutional violations in his post-conviction proceedings are not cognizable in federal habeas corpus. The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502

---

petitioner crossed over the fog line in the 03-08-2013 hearing." (Doc. 46 at PageID 515). Petitioner otherwise points to his trial counsel's cross-examination of Lewis in the suppression hearing in support of his claim that Lewis was not credible. (*Id.* at PageID 515-31). However, during the suppression hearing Lewis testified that he initiated the traffic stop after petitioner "traveled over the white fog line by approximately one tire width." (Doc. 21, Ex. 42 at PageID 405, 406-407). Consistent with his testimony, the prosecution also played a cruiser cam video from the time of petitioner's arrest, during which Lewis informs petitioner "[w]hen you made your lane change from your left lane and made it over to your right lane, you crossed over the white fog line there." (*Id.* at PageID 414). Accordingly, whether or not Lewis suggested petitioner crossed the fog line in the preliminary hearing would not have impacted the outcome of the suppression hearing. Petitioner has thus failed to demonstrate that he was prejudiced by trial counsel. Accordingly, petitioner's ineffective assistance of counsel claim appears to be procedurally defaulted and waived and, in any event, is without merit.

U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Moreover, it is well-settled in the Sixth Circuit that the "the writ of habeas corpus is not the proper means by which prisoners can challenge errors or deficiencies in state post-conviction proceedings, . . . which address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration."  *See, e.g., Dickey v. Warden, Lebanon Corr. Inst.,* No. 1:08cv819, 2010 WL 92510, at *1, *10 (S.D. Ohio Jan. 6, 2010) (Beckwith, J.; Black, M.J.) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002)).  Therefore, alleged errors in the adjudication of petitioner's post-conviction motion do not implicate constitutional concerns and, in any event, involve "collateral matters" that fall outside the scope of federal habeas review.  *Cf. id.* (involving claims of error that allegedly occurred on appeal from the denial of the petitioner's post-sentence motion to withdraw his guilty plea); *Brown v. Warden, Lake Erie Corr. Inst.*, No. 1:11cv2765, 2014 WL 132367, at *1, *17-18 (N.D. Ohio Jan. 14, 2014) (and cases cited therein) (involving claim challenging the denial of a motion for new trial based on new evidence without a hearing).

Accordingly, in sum, petitioner is not entitled to federal habeas relief because his grounds for relief are either without merit or not cognizable in federal habeas corpus.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended, be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which has been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)).  *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  10/4/2021

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES E. BROWN,                                    Case No. 1:17-cv-583
      Petitioner,

                                 McFarland, J.
      vs.                                          Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

25